IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MANUEL GONZALES, | No. C 03-01565 TEH |
| Plaintiff, | |
| v. | **ORDER** |
| C.A. TERHUNE, | |
| Defendant. | |

This matter is before the Court on Petitioner's Motion for New Trial or to Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e). On June 28, 2006, this Court granted this motion in part, and ordered an evidentiary hearing for the limited purpose of hearing testimony from Mr. Greg Sakasegawa. Having carefully considered this testimony and the parties' post-evidentiary hearing briefs, the Court denies Petitioner's Rule 59 Motion to Amend Judgment for the reasons set forth below.

I. BACKGROUND

In its January 12, 2006 Order Denying Petition for Writ of Habeas Corpus, this Court found, *inter alia*, that Petitioner did not prevail on his claim under *Brady v. Maryland*, 373 U.S. 83 (1963) ("Brady claim"). Specifically, the Court held that while the State had improperly suppressed exculpatory evidence – the identity of a confidential witness, later identified as Greg Sakasegawa – Petitioner had not met his burden with respect to the third prong of the *Brady* test which requires a showing of

1 prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). As the Court explained,
2 prejudice will be found if the suppressed evidence was "material" to the accused's guilt
3 or punishment – that is, "if there is a reasonable probability that, had the evidence been
4 disclosed to the defense, the result of the proceeding would have been different." *United*
5 *States v. Bagley*, 473 U.S. 667, 682 (1985). A "'reasonable probability' [is] a
6 'probability sufficient to undermine confidence in the outcome.'" *Id.*; *Anderson v.*
7 *Calderon*, 232 F.3d 1053, 1062, 1066 (9th Cir. 2000), *overruled on other grounds*,
8 *Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002)..

Petitioner focused on the fact that had Mr. Sakasegawa's identity been timely disclosed to Petitioner, Mr. Sakasegawa would have provided testimony favorable to Petitioner at his trial. In particular, Petitioner argues, Mr. Sakasegawa would have testified that the driver of the truck at issue had long hair, which was inconsistent with the State's theory that Petitioner (who had short hair) was the driver of the truck. This Court concluded, however, that Mr. Sakasegawa's initial statements to the police, as reflected in the police report, indicated that Mr. Sakasegawa was not positive regarding what he saw, and that given the wealth of other evidence against Petitioner, he could not satisfy his burden of showing prejudice:

> The testimony of a single witness – that he 'believed [he] had seen long hair on the driver of the pickup' and was 'left with the impression that the driver was female *though [he] could not be positive'* – would have been received against a backdrop of extensive evidence of guilt. . . . ¶ [Given] this wealth of circumstantial evidence, ths Court cannot say it would have been objectively unreasonable for the California Supreme Court to conclude that, had [Mr. Sakasegawa's] identity been disclosed to the defense, it was not reasonably probable that the result of the proceeding would have been different.

January 12, 2006 Order at 32 (emphasis in original); Pet.'s Ex. A at p.2. Accordingly, the Court denied Petitioner's *Brady* claim.

Thereafter, Petitioner filed the instant motion seeking to reverse this Court's judgment on Petitioner's *Brady* claim under Rule 59. Petitioner argued that Mr. Sakasegawa was, in fact, only uncertain regarding the driver's gender, not the length of hair, and therefore Petitioner could satisfy the third materiality prong of the *Brady* test.

2

1  Petitioner also contended that this Court had improperly failed to grant his request for an
2  evidentiary hearing.  On June 28, 2006, this Court granted a limited evidentiary hearing
3  to permit the Court to directly assess Mr. Sakasegawa's proffered testimony and thus
4  determine whether the Court's materiality analysis should be reconsidered.  This hearing
5  was held on August 14, 2006, and the parties thereafter submitted post-evidentiary
6  hearing briefs.

## II. DISCUSSION

At the evidentiary hearing, the Court closely evaluated Mr. Sakasegawa's testimony and credibility in order to assess the likely impact such testimony would have had on Petitioner's trial.  As the Court noted in it June 28, 2006 Order, Mr. Sakasegawa's testimony, "if credible, could have played a very significant role at trial given that the backdrop of extensive culpatory evidence was largely circumstantial." *Id*. at 5.  Having carefully observed Mr. Sakasegawa testify, however, and having evaluated both the substance of his testimony and his demeanor, the Court is obliged to conclude that Mr. Sakasegawa would likely have had little impact on the trial had he been called to testify.

Mr. Sakasegawa was clearly reluctant to testify and appeared pursuant to a subpoena.  He presented as an unusually uncomfortable witness who was unable to testify consistently through a direct and cross-examination.  He explained that the truck at issue passed by during the evening while it was dark but that he could see into the side window because he was sitting in a parked vehicle under a streetlight.  On direct examination he testified that he was "positive" from this view that the driver had long hair (R.T. at 17). On redirect, he testified he was "probably 99.9 percent" sure that the driver had about shoulder length hair.  On cross, however, he testified as follows:

Q: And you said the driver had long hair.  Are you sure of that as you sit here today?

A.  Not definitely positive.

3

  Q. Isn't it true that you told me and my colleagues a couple of weeks ago that you weren't sure that the driver had long hair?

  A. I don't know if they had long hair or not.

  The Court: That's what you told them two weeks ago or that's what you're telling the Court now?

  A: That's what I have said since this thing happened, started happening.

  Q: In fact, didn't you tell us that you weren't sure that what you saw was actually long hair versus a clothing, maybe a hood or some other article of clothing?

  A. (No audible response).

Petitioner argues that this exchange should be disregarded because Mr. Sakasegawa was confused by the cross-examination and could not have meant what he said. While Mr. Sakasegawa was plainly uncomfortable and nervous during the evidentiary hearing, the Court has difficulty dismissing this exchange as a botched response. Mr. Sakasegawa stated affirmatively, twice in a row, that he was not positive or sure if the driver had long hair. He then failed to respond to or object to defense counsel's assertion that he (Mr. Sakasegawa) had previously told counsel that he wasn't sure of what he saw. The Court is not persuaded that Mr. Sakasegawa was so unnerved that he had no cognizance of what he was saying on the critical issue of the hearing; rather, it appeared that Mr. Sakasegawa was unable to maintain his certainty under the pressure of a cross examination.[1] In light of this and other questions raised regarding the reliability of Mr. Sakasegawa's testimony,[2] the Court was left with the belief that, if the evidentiary hearing was any guide, sufficient questions about Mr. Sakasegawa's memory

---

[1] Petitioner also emphasizes that this testimony on cross-examination was inconsistent with declarations signed by Mr. Sakasegawa. Sufficient questions were raised, however, about Mr. Sakasegawa's understanding of the declarations at the time they were signed to give this point substantial weight.

[2] For example, questions were raised as to Mr. Sakasegawa's ability to see clearly into the side window as the truck passed by. He testified that the rear window was tinted and could not confirm that the side windows were not. Rather, he stated "To my knowledge, I don't know if the side windows were tinted." (R.T. at 27).

4

1 and reliability, combined with his shaky demeanor, would have severely compromised
2 his effectiveness and credibility as a witness.

3     When the Court initially denied Petitioner's *Brady* claim, it was based partly on
4 the factual premise – which in turn was based on the Court's interpretation of the police
5 report –  that Mr. Sakasegawa was not positive about the truck driver's hair or gender.
6 While the Court was willing to entertain the fact that this premise was incorrect, in light
7 of the evidentiary hearing, the Court is no longer persuaded that there are clear grounds
8 to revisit its analysis.

9      As this Court further explained, where, as here, the state court denies a *Brady*
10 claim without discussion, the federal court is required to conduct an "independent
11 review" of the record.  Based on this independent review, this Court must determine
12 whether the state courts "clearly erred" in denying the *Brady* claim. *See Pirtle v.*
13 *Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). ("Under such circumstances [where there
14 is no state court reasoning provided], we independently review the record to determine
15 whether the state court clearly erred in its application of Supreme Court law.").  Thus,
16 "although we independently review the record, we still defer to the state court's ultimate
17 decision." *Id.*

18     Here, after independently reviewing the record, including the record of the
19 evidentiary hearing, this Court can not say that the state court's denial of Petitioner's
20 *Brady* claim was clearly error.  Rather, the Court concludes the facts are essentially in
21 the same posture as when the Court considered the issue in its January 12, 2006 Order.
22 At best, Mr. Sakasegawa had a passing glimpse into the side window of a moving
23 vehicle, and with respect to that glimpse the police report, as well as Mr. Sakasegawa's
24 testimony, indicates a lack of certainty as to what he saw.  Accordingly, the Court
25 affirms its original ruling, for the reasons set forth therein, and finds that a state court
26 could have reasonably found, without committing clear error, that the failure to disclose
27 Mr. Sakasegawa did not undermine confidence in the outcome of the trial court
28 proceedings, given the extensive evidence against Petitioner.

5

Accordingly, and good cause appearing, the Court denies Petitioner's Petition to Amend the Judgment.

**IT IS SO ORDERED.**

Dated:       Nov. 9, 2006

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE